| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| LAW OFFICES OF LES ZIEVE<br>BRIAN H. TRAN, ESQ. #255577<br>LESLIE M. KLOTT, ESQ. #279622<br>30 Corporate Park, Suite 450<br>Irvine, CA 92606<br>Phone: (714) 848-7920<br>Facsimile: (714) 908-7807<br>Email: bankruptcy@zievelaw.com<br><br>☐ *Movant appearing without an attorney*<br>☒ *Attorney for Movant* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br><br>John Ellis, , *dba* Lippe Wood Company<br><br><br><br><br><br>Debtor(s). | CASE NO.:  2:14-bk-27429-WB<br><br>CHAPTER:  7<br><br>**NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)**<br><br>DATE:  March 2, 2015<br>TIME:  10:00 a.m.<br>COURTROOM:  1375 |

**Movant:** Ventures Trust 2013-I-H-R by MCM Capital Partners, LLC, Its Trustee

1. **Hearing Location**:

   ☒ 255 East Temple Street, Los Angeles, CA 90012   ☐ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367   ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

4.  When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5.  If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.  ☒  This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7.  ☐  This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

   a.  ☐  An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b.  ☐  An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c.  ☐  An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date:  February 5, 2015

Law Offices of Les Zieve
Printed name of law firm (if applicable)

Leslie M. Klott
Printed name of individual Movant or attorney for Movant

/s/ Leslie M. Klott
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                     Page 2                          F 4001-1.RFS.RP.MOTION

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

   ☐ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

   ☐ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

   ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

   ☒ Other (*specify*):  Movant is the assignee of the security instrument for the referenced loan.  Movant, directly or through an agent, has possession of the promissory note and the promissory note is either made payable to Movant or has been duly endorsed in blank.

2. **The Property at Issue (Property):**

   a. Address:

   *Street address*:  4 Corte La Cereza
   *Unit/suite number*:
   *City, state, zip code*:  San Clemente, CA 92673

   b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit ___2___):

3. **Bankruptcy Case History:**

   a. A ☒ voluntary ☐ involuntary   bankruptcy petition under chapter ☐ 7 ☐ 11 ☐ 12 ☒ 13 was filed on (*date*) __9/12/2014__.

   b. ☒ An order to convert this case to chapter ☒ 7 ☐ 11 ☐ 12 ☐ 13 was entered on (*date*) __10/29/2014__.

   c. ☐ A plan, if any, was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay**:

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

   (1) ☐ Movant's interest in the Property is not adequately protected.

      (A) ☐ Movant's interest in the Property is not protected by an adequate equity cushion.

      (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

      (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

   (2) ☒ The bankruptcy case was filed in bad faith.

      (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

      (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

      (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

      (D) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

      (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition.  Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

      (F) ☒ Other (*see attached continuation page*).

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

    (3) ☐ (*Chapter 12 or 13 cases only*)

        (A) ☐ All payments on account of the Property are being made through the plan.
☐ Preconfirmation ☐ Postconfirmation  plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

        (B) ☐ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

    (4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

    (5) ☐ The Movant regained possession of the Property on (*date*) _____, which is ☐ prepetition ☐ postpetition.

    (6) ☐ For other cause for relief from stay, see attached continuation page.

b. ☐ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☒ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    (1) ☒ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

    (2) ☐ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ Other (*specify*):

6. **Evidence in Support of Motion: (D*eclaration(s) MUST be signed under penalty of perjury and attached to this motion*)**

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☐ Supplemental declaration(s).

c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents. Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit _____.

d. ☒ Other:  Unauthorized Grant Deeds as Exhibit "4"

7. ☐ **An optional Memorandum of Points and Authorities is attached to this motion.**

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**Movant requests the following relief:**

1. Relief from the stay is granted under:  ☒ 11 U.S.C. § 362(d)(1)   ☐ 11 U.S.C. § 362(d)(2)   ☐ 11 U.S.C. § 362(d)(3).

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3. ☒ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement. Any such agreement shall be nonrecourse unless stated in a reaffirmation agreement.

3. ☐ Confirmation that there is no stay in effect.

4. ☐ The stay is annulled retroactive to the bankruptcy petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

5. ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

6. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

7. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
   ☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

8. ☒ Relief from the stay is granted under 11 U.S.C. § 362(d)(4):  If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

9. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
   ☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

10. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
   ☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

12. ☒ If relief from stay is not granted, adequate protection shall be ordered.

13. ☐ See attached continuation page for other relief requested.

Date:  February 5, 2015

Law Offices of Les Zieve
Printed name of law firm (*if applicable*)

Leslie M. Klott
Printed name of individual Movant or attorney for Movant

/s/ Leslie M. Klott
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# REAL PROPERTY DECLARATION

I, (*print name of Declarant*) _Dan Means_ , declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (*specify*):

   a. ☐ I am the Movant.

   b. ☐ I am employed by Movant as (*state title and capacity*):

   c. ☒ Other (*specify*): I am _Vice President_ for Ventures Trust 2013-I-H-R by MCM Capital Partners, LLC, Its Trustee, Movant.

2. a. ☒ I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

   b. ☐ Other (*see attached*):

3. The Movant is:

   a. ☐ Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit _____.

   b. ☐ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit _____.

   c. ☐ Servicing agent authorized to act on behalf of the:
      ☐ Holder.
      ☐ Beneficiary.

   d. ☒ Other (*specify*): Movant is the assignee of the security instrument for the referenced loan. Movant, directly or through an agent, has possession of the promissory note and the promissory note is either made payable to Movant or has been duly endorsed in blank.

4. a. The address of the Property is:

   Street address: 4 Corte La Cereza
   Unit/suite no.:
   City, state, zip code: San Clemente, CA 92673

   b. The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:

   See Exhibit 2

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                   Page 6                              F 4001-1.RFS.RP.MOTION

5. Type of property (*check all applicable boxes*):

   a. ☐ Debtor's principal residence     b. ☒ Other residence
   c. ☐ Multi-unit residential     d. ☐ Commercial
   e. ☐ Industrial     f. ☐ Vacant land
   g. ☐ Other (*specify*):

6. Nature of the Debtor's interest in the Property:

   a. ☐ Sole owner

   b. ☐ Co-owner(s) (*specify*):

   c. ☐ Lienholder (*specify*):

   d. ☒ Other (*specify*):  Grantee under unauthorized Grant Deed. See Exhibit "4"

   e. ☒ The Debtor ☐ did ☒ did not list the Property in the Debtor's schedules.

   f. ☒ The Debtor acquired the interest in the Property by ☒ grant deed ☐ quitclaim deed ☐ trust deed.
      The deed was recorded on (*date*) _10/08/2013_ .

7. Movant holds a ☒ deed of trust ☐ judgment lien ☐ other (*specify*) _____
   that encumbers the Property.

   a. ☒ A true and correct copy of the document as recorded is attached as Exhibit _2_ .

   b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is
      attached as Exhibit _1_ .

   c. ☒ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
      trust to Movant is attached as Exhibit _3_ .

8. Amount of Movant's claim with respect to the Property:

| | | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ | $ | $ 800,015.82 |
| b. | Accrued interest: | $ | $ | $ 231,937.12 |
| c. | Late charges | $ | $ | $ 0.00 |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ | $ | $ 0.00 |
| e. | Advances (property taxes, insurance): | $ | $ | $ 74,062.67 |
| f. | Less suspense account or partial balance paid: | $[          ] | $[          ] | $[ 0.00 ] |
| g. | TOTAL CLAIM as of (*date*):    01/11/2015 | $ | $ | $ 1,106,015.61 |

   h. ☐ Loan is all due and payable because it matured on (*date*) _____

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action has occurred*):

   a. Notice of default recorded on (*date*) _09/04/2014_ or ☐ none recorded.

   b. Notice of sale recorded on (*date*) _____ or ☒ none recorded.

   c. Foreclosure sale originally scheduled for (*date*) _____ or ☒ none scheduled.

   d. Foreclosure sale currently scheduled for (*date*) _____ or ☒ none scheduled.

   e. Foreclosure sale already held on (*date*) _____ or ☒ none held.

   f. Trustee's deed upon sale already recorded on (*date*) _____ or ☒ none recorded.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                     Page 7                   F 4001-1.RFS.RP.MOTION

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☒ (*chapter 7 and 11 cases only*) Status of Movant's loan:

   a. Amount of current monthly payment as of the date of this declaration: $_____4,634.88_____ for the month of ___January___ 20_15_.

   b. Number of payments that have come due and were not made: __79__. Total amount: $_____319,191.12_____

   c. Future payments due by time of anticipated hearing date (*if applicable*):

      An additional payment of $_____4,634.88_____ will come due on (*date*) _02/01/2015_, and on the _1st_ day of each month thereafter. If the payment is not received within __15__ days of said due date, a late charge of $___5% of payment___ will be charged to the loan.

   d. The fair market value of the Property is $__N/A BAD FAITH__, established by:

      (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____.

      (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.

      (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____.

      (4) ☐ Other (*specify*):

   e. Calculation of equity/equity cushion in Property:

      Based upon ☐ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | | $ | $ |
| 2nd deed of trust: | | $ | $ |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | | $ | $ |
| Other: | | $ | $ |
| **TOTAL DEBT: $** | | | |

   f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit _____ and consists of:

      (1) ☐ Preliminary title report.

      (2) ☐ Relevant portions of the Debtor's schedules.

      (3) ☐ Other (*specify*):

   g. ☐ 11 U.S.C. § 362(d)(1) - Equity Cushion:
      I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $_____ and is _____% of the fair market value of the Property.

   h. ☐ 11 U.S.C. § 362(d)(2)(A) - Equity:
      By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $_____.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                          Page 8                          F 4001-1.RFS.RP.MOTION

i. ☐ Estimated costs of sale: $_____ (estimate based upon _____% of estimated gross sales price)

j. ☐ The fair market value of the Property is declining because:

12. ☐ (*Chapter 12 and 13 cases only*) Status of Movant's loan and other bankruptcy case information:

a. A 341(a) meeting of creditors is currently scheduled for (*or concluded on*) the following date: _____.
A plan confirmation hearing currently scheduled for (or concluded on) the following date:_____.
A plan was confirmed on the following date (*if applicable*): _____.

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:                    $
(*For details of type and amount, see Exhibit _____*)

e. Attorneys' fees and costs:                                              $
(*For details of type and amount, see Exhibit _____*)

f. Less suspense account or partial paid balance:                     $[                    ]

TOTAL POSTPETITION DELINQUENCY:                     $

g. Future payments due by time of anticipated hearing date (*if applicable*): _____.
An additional payment of $_____ will come due on _____, and on
the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late
charge of $_____ will be charged to the loan.

h. Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):

$_____    received on (*date*) _____
$_____    received on (*date*) _____
$_____    received on (*date*) _____

i. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent.
A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or
13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (date) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (date) _____, which is ☐ prepetition. ☐ postpetition.

17. ☒ The bankruptcy case was filed in bad faith:

   a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

   b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

   c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

   d. ☒ Other (specify): Unauthorized Grant Deed - See Exhibit "4"


18. ☒ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

   a. ☒ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

   b. ☐ Multiple bankruptcy cases affecting the Property include:

   1. Case name: _____
      Chapter: _____ Case number: _____
      Date filed: _____ Date discharged: _____ Date dismissed: _____
      Relief from stay regarding the Property ☐ was ☐ was not granted.

   2. Case name: _____
      Chapter: _____ Case number: _____
      Date filed: _____ Date discharged: _____ Date dismissed: _____
      Relief from stay regarding the Property ☐ was ☐ was not granted.

   3. Case name: _____
      Chapter: _____ Case number: _____
      Date filed: _____ Date discharged: _____ Date dismissed: _____
      Relief from stay regarding the Property ☐ was ☐ was not granted.

   ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

   ☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental
declaration(s).

    a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would
have been entitled to relief from stay to proceed with these actions.

    b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed
with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

    c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

1/22/15
_Date_

Daniel B. Means
_Printed name_
Title: Vice President for BSI Financial
Services, attorney in fact for
Ventures Trust 2013-I-H-R by MCM
Capital Partners, LLC, its trustee

_Signature_

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re | (SHORT TITLE) | | CHAPTER: 7 |
|---|---|---|---|
| | | Debtor(s). | |
| John Ellis, *dba* Lippe Wood Company | | | CASE NO.: 2:14-bk-27429-WB |

## CONTINUATION PAGE ATTACHMENT
### (**MOVANT:** Ventures Trust 2013-I-H-R by MCM Capital Partners, LLC, Its Trustee

### ATTACHMENT 4.a(2)(f) & 17.d.

☒    Movant's original borrower, Deborah Looman Hancock ("Borrower"), recorded an unauthorized Grant Deed on August 21, 2007, without the approval of Movant and/or this Court.  The Grant Deed purports to convey an interest in the subject property from Borrower Deborah Looman Hancock to L. Alexandra Solomon Irrevocable Trust, Dated April 12, 2001, Alexandra Solomon as Trustee.  A true and correct copy of the Grant Deed is attached hereto as Exhibit "4" and incorporated herein by reference.

On August 9, 2013, an unauthorized Grant Deed was recorded without the approval of the Movant and/or this Court purporting to convey an interest in the subject property from L. Alexandra Solomon Irrevocable Trust, Dated April 12, 2001Nicholas Solomon as Sucessor Trustee to Edward Solomon.  A true and correct copy of the Grant Deed is attached hereto as Exhibit "4" and incorporated herein by reference.

On October 8, 2013, an unauthorized Grant Deed was recorded without the approval of the Movant and/or this Court purporting to convey an interest in the subject property from Edward Solomon to John Ellis, debtor herein.  A true and correct copy of the Grant Deed is attached hereto as Exhibit "4" and incorporated herein by reference.

Movant believes that Debtor is part of a bad faith bankruptcy filing scheme intended to delay, hinder, and defraud Movant.

Movant requests relief under 11 U.S.C. Section 362(d)(4) in all pending and future bankruptcy cases affecting the subject property so that Movant may pursue its state law remedies with respect to the Real Property.

### ATTACHMENT 13.

Other relief requested:

☒    In the event that the instant bankruptcy case is dismissed prior to the hearing on Movant's Motion for Relief from the Automatic Stay, Movant requests that the Court retain jurisdiction, as Movant is requesting relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(4).

LOAN NO.:

# ADJUSTABLE RATE NOTE
## (MTA - Twelve Month Average Index - Payment Caps)

MIN
MERS Phone: 1-888-679-6377

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.**

JANUARY 09, 2007                          NEWPORT BEACH                          CALIFORNIA
[Date]                                    [City]                                 [State]

4 CORTE LA CEREZA, SAN CLEMENTE, CA 92673
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $      749,250.00      (this amount is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under the terms of this Note but will never exceed **ONE HUNDRED FIFTEEN AND 000/1000THS** (    115.000    %) of the Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is

**MORTGAGEIT, INC**

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

#### (A) Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      1.250      %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

#### (B) Interest Rate Change Dates

The interest rate I will pay may change on the      **1st**      day of      **MARCH, 2007**      , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

#### (C) Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

#### (D) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding **THREE AND 800/1000THS** percentage point(s) (      3.800      %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than      9.950      %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

Initials:

PayOption ARM Note - MTA Index
FE-5312 (0511)                          Page 1 of 5                          LENDER SUPPORT SYSTEMS, INC. FE5312XX.COU (12/06)

EXHIBIT "1"

3.    **PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the    1st    day of each month beginning on    **MARCH, 2007**    .
I will make these payments every month until I have paid all the Principal and Interest and any other charges described
below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied
to interest before Principal. If, on    **FEBRUARY 01, 2047**    , I still owe amounts under this Note, I will pay those
amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at    **GMAC MORTGAGE, LLC**
**PO BOX 780, WATERLOO, IA 50704-**
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $    1,984.35
unless adjusted under Section 3(F).

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the 1st  day of    **MARCH, 2008**    ,
and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also
will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment"
is the minimum amount the Note Holder will accept for my monthly payment which is determined at the last Payment Change
Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest
due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided
in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that
would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity
date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The
result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly
payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5%
limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply
to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by
taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the
number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to
pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have
the option to pay the Full Payment for my monthly payment.

**(E) Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject
to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the
interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment
date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the
interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and
will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate
required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply
the payment as provided in Section 3(A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to    **ONE HUNDRED FIFTEEN  AND 000/1000THS**    percent
( 115.000 %) of the Principal amount I originally borrowed. My unpaid principal could exceed that Maximum Limit due to

PayOption ARM Note - MTA Index
FE-5312 (0511)                    Page 2 of 5

Initials

EXHIBIT "1"

Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

### (G) Required Full Payment

On the **fifth** Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

### (H) Payment Options

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are **greater** than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

**(i) Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

**(ii) Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.

**(iii) 15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

## 4. NOTICE OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **FIFTEEN** ( 15 ) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of Principal and Interest. I will pay this late charge promptly but only once on each late payment.

PayOption ARM Note - MTA Index
FE-5312 (0511)

Page 3 of 5

Initials: [signature]

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.  SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option

**PayOption ARM Note - MTA Index**
**FE-5312 (0511)**

Initials

**EXHIBIT "1"**

shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)    _____ (Seal)
DEBORAH LOOMAN HANCOCK        -Borrower                                     -Borrower

_____ (Seal)    _____ (Seal)
                              -Borrower                                     -Borrower

                                           PAY TO THE ORDER OF

                                           WITHOUT RECOURSE
                                           COUNTRYWIDE BANK, FSB

_____ (Seal)    _____ (Seal)
                              -Borrower    BY                               -Borrower
                                              *Laurie Meder*
                                           LAURIE MEDER
                                           SENIOR VICE PRESIDENT

_____ (Seal)    _____ (Seal)
                              -Borrower                                     -Borrower


                              Pay to the order of
                              COUNTRYWIDE BANK, FSB
                              Without Recourse
                              MortgageIT, Inc.

                              By: _____
                              Name: Randy Bowers
                              Its: Assistant Secretary


PayOption ARM Note - MTA Index
FE-5312 (0511)

EXHIBIT "1"

**RECORDING REQUESTED BY:**
**ALLIANCE TITLE COMPANY**

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖    **81.00**

**2007000030174 08:00am 01/17/07**
113 28 D11 26

0.00 0.00 0.00 0.00 75.00 0.00 0.00 0.00

*(left margin, rotated:)* RECORDING REQUEST BY : DPS ON BEHALF OF: ALL-NEWPORT

Recording Requested By:
**MORTGAGEIT**

Return To:
**MORTGAGEIT**

**1350 DEMING WAY, 3RD FLOOR**
**MIDDLETON, WI 53562**
Prepared By:

——————————— [Space Above This Line For Recording Data] ———————————

# DEED OF TRUST

LOAN NO.:                                           MIN
ESCROW N                                        MERS Phone: 1-888-679-6377

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated          **JANUARY 09, 2007**          ,
together with all Riders to this document.
**(B) "Borrower"** is
**DEBORAH LOOMAN HANCOCK, AN UNMARRIED WOMAN**

Borrower's address is **4 CORTE LA CEREZA, SAN CLEMENTE, CA 92673**
Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
**MORTGAGEIT, INC**

Lender is a   **CORPORATION**
organized and existing under the laws of   **NEW YORK**

Initials:

**CALIFORNIA**-Single Family-**Fannie Mae/Freddie Mac** UNIFORM INSTRUMENT WITH MERS          Form 3005 1/01
V-6A(CA) (0207).01                         Page 1 of 15          LENDER SUPPORT SYSTEMS, INC MERS6ACA.NEW (05/06)

EXHIBIT "2"

Lender's address is
**33 MAIDEN LANE, NEW YORK, NY 10038-**

**(D) "Trustee"** is
**ALLIANCE TITLE**

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument**. MERS is organized and existing under the laws of Delaware, and has an address and telephone of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated    **JANUARY 09, 2007**
The Note states that Borrower owes Lender

**SEVEN HUNDRED FORTY NINE THOUSAND TWO HUNDRED FIFTY AND NO/100 X X X X X X X X X X X X**

Dollars

(U.S. $ **749,250.00**          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    **FEBRUARY 01, 2047**                .

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "RIDERS"** means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [XX] Adjustable Rate Rider | [ ] Condominium Rider | [ ] 1-4 Family Rider |
| [ ] Graduated Payment Rider | [XX] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] Balloon Rider | [ ] Rate Improvement Rider | [ ] Second Home Rider |
| [ ] Other(s) [specify] | | |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials

**EXHIBIT "2"**

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| COUNTY | of | ORANGE | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

**SEE COMPLETE LEGAL DESCRIPTION DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.**

Parcel ID Number: **70138243**                     which currently has the address of
                    **4 CORTE LA CEREZA**                     [Street]
          **SAN CLEMENTE**          [City], California     **92673**     [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

**V-6A(CA)** (0207) 01                    Page 3 of 15                    Initials: _____
                                                                Form 3006  1/01

EXHIBIT "2"

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

V-6A(CA) (0207).01                    Page 4 of 15                    Form 3005  1/01

Initials

EXHIBIT "2"

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

V-6A(CA) (0207).01                    Page 6 of 15                    Initials: _____

                                                                      Form 3005 1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

EXHIBIT "2"

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

Initials:

Form 3005 1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

V-6A(CA) (0207).01                              Page 9 of 15                              Form 3005  1/01

Initials: _____

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

EXHIBIT "2"

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

V-6A(CA) (0207).01                          Page 11 of 15                          Initials: _____    Form 3005 1/01

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

EXHIBIT "2"

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

V-6A(CA) (0207).01                    Page 13 of 15                    Initials: _____    Form 3005 1/01

EXHIBIT "2"

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any RIDER executed by Borrower and recorded with it.

Witnesses:

_____
                                                                    -Witness

_____
                                                                    -Witness


_____(Seal)          _____(Seal)
DEBORAH LOOMAN HANCOCK        -Borrower                                                 -Borrower

_____(Seal)          _____(Seal)
                                                 -Borrower                                                 -Borrower

_____(Seal)          _____(Seal)
                                                 -Borrower                                                 -Borrower

_____(Seal)          _____(Seal)
                                                 -Borrower                                                 -Borrower

EXHIBIT "2"

State of   CALIFORNIA
County of   *Orange*                                          } ss.

On  *JANUARY, 10th, 2007*  before me,  *TROY BOWMAN, NOTARY PUBLIC*
                                                                    personally appeared

**DEBORAH LOOMAN HANCOCK**

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

                                                              _____ (Seal)

TROY BOWMAN
Commission # 1575905
Notary Public - California
Orange County
My Comm. Expires May 7, 2009

V-6A(CA) (0207).01                      Page 15 of 15                 Initials: _____
                                                                      Form 3005  1/01

EXHIBIT "2"

## GOVERNMENT CODE 27361.7

I cerify under penealty that the Notary Seal on the document to which this statement is attached reads as follows:

NAME OF NOTARY: Troy Bowman

DATE COMISSION EXPIRES: May 7, 2009

COUNTY WHERE BOND IS FILED: Orange

COMISSION NUMBER: 1576995          VENDOR NUMBER: NNA1

I certify under penealty of perjury and the laws of the State of California that the illiegible portion of this document to which this statement is attached reads as follows:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

subscribed to the with in instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized

Personally know to me (or proved to me on the basis of satisfactoy evidence) to be the person(s) whose name(s) is/ are capacity (ies), and that by his/her/their signature (s) on the instrument the person(s) or entity upon behalf of which the person(s) acted, executed the instrument.

PLACE OF EXECUTION:    Santa Ana

SIGNATURE: Stephanie Freeman          DATE: JAN / 16 / 2006

EXHIBIT "2"

# EXHIBIT A

**ORDER NO:**
**REFERENCE NO: HANCOCK**
**TITLE OFFICER: JOHNA CANNON**

## DESCRIPTION

THE LAND REFERRED TO IN THIS REPORT IS SITUATED IN THE **STATE OF CALIFORNIA, COUNTY OF ORANGE, CITY OF SAN CLEMENTE,** AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT 54 OF TRACT NO. 16365, AS SHOWN ON A SUBDIVISION MAP RECORDED IN BOOK 843, PAGES 35 TO 42 INCLUSIVE OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE ORANGE COUNTY RECORDER.

PARCEL 2:

NON-EXCLUSIVE EASEMENTS REVOCABLE LICENSES AND OTHER RIGHTS FOR ACCESS, INGRESS, EGRESS, USE AND ENJOYMENT, DRAINAGE, ENCROACHMENT, SUPPORT, MAINTENANCE, REPAIRS, AND FOR OTHER PURPOSES, ALL AS DESCRIBED IN THE MASTER DECLARATION, THE SUPPLEMENTAL DECLARATION, THE MAP AND THE AGREEMENT.

701-382-43

## ADJUSTABLE RATE RIDER
### (MTA-Twelve Month Average Index - Payment Caps)

LOAN NO.:                                                    MIN:
                                                             MERS Phone: 1-888-679-6377

THIS ADJUSTABLE RATE RIDER is made this 9th day of        JANUARY, 2007      , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to MORTGAGEIT, INC

("Lender") of the same date and covering the property described in the Security Instrument and located at:

4 CORTE LA CEREZA, SAN CLEMENTE, CA 92673

[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THE NOTE.**

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agrees as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for changes in the interest rate and the monthly payments, as follows:

**2. INTEREST**
   **(A) Interest Rate**
   Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of        1.250        %. The interest rate I will pay may change.
   The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of the Note.

   **(B) Interest Rate Change Dates**
   The interest rate I will pay may change on the   1st   day of      MARCH, 2007       , and on that day every month thereafter. Each date on which my interest rate could change is

**PayOption MTA ARM Rider**                              Initials: _____
**FE-5315** (0511)  Page 1 of 6    LENDER SUPPORT SYSTEMS, INC. COU-5315.COU (01/06)

called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

**(C) Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding         THREE AND 800/1000THS         percentage point(s)        3.800       % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than       9.950      %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the 1st day of each month beginning on MARCH, 2007             . I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    FEBRUARY 01, 2047    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at GMAC MORTGAGE, LLC
PO BOX 780, WATERLOO, IA  50704-
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $     1,984.35      unless adjusted under Section 3(F).

**PayOption MTA ARM Rider**
**FE-5315** (0511)                    Page 2 of 6                    Initials: _[signature]_

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the 1st day of          MARCH, 2008          , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

**(E) Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**PayOption MTA ARM Rider**
**FE-5315** (0511)                    Page 3 of 6                    Initials: _____

EXHIBIT "2"

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN AND 000/1000THS percent ( 115.000 %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G) Required Full Payment**

On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H) Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are **greater** than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

(i)     **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii)    **Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.

(iii)   **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

**B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

**PayOption MTA ARM Rider**
**FE-5315** (0511)                    Page 4 of 6                    Initials:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**PayOption MTA ARM Rider**
**FE-5315** (0511)                  Page 5 of 6                  Initials: _____

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
DEBORAH LOOMAN HANCOCK          -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                        -Borrower

**PayOption MTA ARM Rider**
**FE-5315** (0511)                    Page 6 of 6

EXHIBIT "2"

# PLANNED UNIT DEVELOPMENT RIDER

MIN:
MERS Phone: 1-888-679-6377

LOAN NO.:

THIS PLANNED UNIT DEVELOPMENT RIDER is made this            9th            day of
JANUARY, 2007        , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the
same date, given by the undersigned (the "Borrower") to secure Borrower's Note to
MORTGAGEIT, INC

(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at:

4 CORTE LA CEREZA, SAN CLEMENTE, CA 92673
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling,
together with other such parcels and certain common areas and facilities, as described in

COVENANTS, CONDITIONS AND RESTRICTIONS.

(the "Declaration"). The Property is a part of a planned unit development known as

SAN CLEMENTE/TALEGA

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or
equivalent entity owning or managing the common areas and facilities of the PUD (the
"Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners
Association; and (iii) any by-laws or other rules or regulations of the Owners Association.
Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the
Constituent Documents.

Initials:

**MULTISTATE PUD RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
Form 3150 1/01
V-7R (0411).01                    Page 1 of 3                    LENDER SUPPORT SYSTEMS INC. 7R.NEW (07/06)

EXHIBIT "2"

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become

Initials: _____

V-7R (0411).01                      Page 2 of 3                      Form 3150 1/01

additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____(Seal)          _____(Seal)
DEBORAH LOOMAN HANCOCK      -Borrower                                -Borrower

_____(Seal)          _____(Seal)
                           -Borrower                                -Borrower

_____(Seal)          _____(Seal)
                           -Borrower                                -Borrower

_____(Seal)          _____(Seal)
                           -Borrower                                -Borrower


**V-7R** (0411).01                    Page 3 of 3                    **Form 3150 1/01**


EXHIBIT "2"

Recording Requested By:
**Bank of America**
Prepared By:  Aida Duenas
**450 E. Boundary St.**
**Chapin, SC 29036**
**888-603-9011**
When recorded mail to:
**CoreLogic**
**450 E. Boundary St.**
**Attn: Release Dept.**
**Chapin, SC 29036**

DocID#

Property Address:
**4 CORTE LA CEREZA**
**San Clemente, CA 92673**
CA0-ADT                    4/12/2011

**Recorded In Official Records, Orange County**
**Tom Daly, Clerk-Recorder**

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ 9.00

2011000210338 1:50 pm 04/26/11

47 412 A32   1

0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

This space for Recorder's use

MIN                                            MERS Phone #:  888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **3300 S.W. 34TH AVENUE, SUITE 101 OCALA, FL 34474** does hereby grant, sell, assign, transfer and convey unto **BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME   LOANS SERVICING, LP** whose address is **BAC CORP OWNED ASSET, SIMI VALLEY,CA 93065** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:             **MORTGAGEIT INC**
Original Borrower(s):        **DEBORAH LOOMAN HANCOCK, AN UNMARRIED WOMAN**
Original Trustee:            **ALLIANCE TITLE**
Date of Deed of Trust:       **1/9/2007**
Original Loan Amount:        **$749,250.00**

Recorded in **Orange County, CA** on: **1/17/2007**, book **N/A**, page **N/A** and instrument number **2007000030174**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
_04/13/2011_

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC.

By: _Dominique Johnson_
**Dominique Johnson, Assistant Secretary**

State of **California**
County of **Ventura**

On _April 13th 2011_ before me, **Deborah L. Beard**, Notary Public, personally appeared **Dominique Johnson**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

_Deborah L. Beard_
Notary Public: **Deborah L. Beard**
My Commission Expires: **6/26/2013**                        **(Seal)**

DEBORAH L. BEARD
Commission # 1853913
Notary Public - California
Ventura County
My Comm. Expires Jun 26, 2013

EXHIBIT "3"

Recording Requested By:
**Bank of America, N.A.**
Prepared By: **Anne-Marie Calderon**
**101 S. Marengo Ave.**
**Pasadena, CA 91101**
**800-444-4302**

When recorded mail to:
**CoreLogic**
**Mail Stop: ASGN**
**1 CoreLogic Drive**
**Westlake, TX 76262-9823**

DocID#
Property Address:

**4 CORTE LA CEREZA**
**San Clemente, CA 92673**

CA0-AL          2/5/2014  BSI1220

**Recorded in Official Records, Orange County**
**Hugh Nguyen, Clerk-Recorder**

12.00

* $ R 0 0 0 6 5 3 0 3 9 7 $ *

2014000073732 8:00 am 02/26/14

232 403 A32 F13    2

0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00 0.00

This space for Recorder's use

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063** does hereby grant, sell, assign, transfer and convey unto **VENTURES TRUST 2013-I-H-R BY MCM CAPITAL PARTNERS, LLC, ITS TRUSTEE** whose address is **7500 OLD GEORGETOWN RD, SUITE 1300, BETHESDA, MD 20814** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

| | |
|---|---|
| Beneficiary: | **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR MORTGAGEIT, INC, ITS SUCCESSORS AND ASSIGNS** |
| Original Borrower(s): | **DEBORAH LOOMAN HANCOCK, AN UNMARRIED WOMAN** |
| Original Trustee: | **ALLIANCE TITLE** |
| Date of Deed of Trust: | **1/9/2007** |
| Original Loan Amount: | **$749,250.00** |

Recorded in **Orange County**, CA on: 1/17/2007, book N/A, page N/A and instrument number 2007000030174

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
**FEB 0 6 2014**

**BANK OF AMERICA, N.A., SUCCESSOR BY MERGER**
**TO BAC HOME LOANS SERVICING, LP, FKA**
**COUNTRYWIDE HOME LOANS SERVICING LP**

By: _____

Melissa Gomez
**Assistant Vice President**

EXHIBIT "3"

State of **California**
County of **Los Angeles**

On ___FEB 0 6 2014___ before me, _____**Sophie Neary Pok**_____, Notary Public, personally appeared
_____**Melissa Gomez**_____, who proved to me on the basis of satisfactory evidence to be the person
(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.**

WITNESS my hand and official seal.

SOPHIE NEARY POK
COMM. #1946008
Notary Public - California
Orange County
My Comm. Expires July 30, 2015

Notary Public: ____**Sophie Neary Pok**____        (Seal)
My Commission Expires: ____**July 30, 2015**____

EXHIBIT "3"

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

**9.00**

**2007000519330 11:44am 08/21/07**

105 48 G02 2

13.75 13.75 0.00 0.00 3.00 0.00 0.00 0.00

Recording Requested By:
**UNITED TITLE COMPANY**
When Recorded Mail To And
Mail Tax Statements To:

**L. ALEXANDRA SOLOMON**
**33495 MOONSAIL DRIVE**
**MONARCH BEACH, CA 92629**

APN No. __701-382-43__

(This Space for recorders use only)

## GRANT DEED

The UNDERSIGNED Grantor (s) declare (s):  Documentary transfer tax is $ 22 50    See below
( ) computed on full value of property conveyed, or    ( ) Realty not sold
(X) computed on the full value less liens or encumbrances
remaining at the time of sale

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledge,

**DEBORAH LOOMAN HANCOCK, A UNMARRIED WOMAN**

hereby GRANT (S) to:

**L. ALEXANDRA SOLOMON IRREVOCABLE TRUST, DATED APRIL 12, 2001, ALEXANDRA
SOLOMON AS TRUSTEE**

the following real property in the City of  San Clemente  County of Orange  State of  California:

See Exhibit "A" attached

_Deborah Looman Hancock_
Deborah Looman Hancock

State of California    }
                       } ss.
County of  _Orange_    }

On _8/3/2007_    Before me,  _James Sungkyu Pak_    ,
Notary Public/ Personally appeared: _Deborah Looman Hancock_
[ ] personally known to me; or [X] proved to me on the basis of satisfactory evidence;
to be the person(s) whose name(s) IS/ARE subscribed to the within instrument, and acknowledged to me that HE/SHE/THEY
executed the same in HIS/HER/THEIR  authorized capacity(ies), and that HIS/HER/THEIR  signature(s) on the instrument
the person or entity upon behalf of which person(s) acted, executed the instrument.

WITNESS my hand and official seal

**JAMES SUNGKYU PAK**
Commission # 1576485
Notary Public - California
Orange County
My Comm. Expires May 6, 2009

Notary Public

# EXHIBIT "4"

EXHIBIT A

**DESCRIPTION**

THE LAND REFERRED TO IN THIS REPORT IS SITUATED IN THE **STATE OF CALIFORNIA, COUNTY OF ORANGE, CITY OF SAN CLEMENTE,** AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT 54 OF TRACT NO. 16365, AS SHOWN ON A SUBDIVISION MAP RECORDED IN BOOK 843, PAGES 35 TO 42 INCLUSIVE OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE ORANGE COUNTY RECORDER.

PARCEL 2:

NON-EXCLUSIVE EASEMENTS REVOCABLE LICENSES AND OTHER RIGHTS FOR ACCESS, INGRESS, EGRESS, USE AND ENJOYMENT, DRAINAGE, ENCROACHMENT, SUPPORT, MAINTENANCE, REPAIRS, AND FOR OTHER PURPOSES, ALL AS DESCRIBED IN THE MASTER DECLARATION, THE SUPPLEMENTAL DECLARATION, THE MAP AND THE AGREEMENT.

701-382-43

EXHIBIT "4"

**RECORDING REQUESTED BY:**

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder



**12.00**

**WHEN RECORDED MAIL TO:**

* S R 0 0 0 6 1 0 5 0 7 7 $ *

**2013000475830** 12:18pm 08/09/13

Edward Solomon
4 Corte La Cereza
San Clemente, CA 92673

66 401 G02 F13 2

0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

SPACE ABOVE THIS LINE FOR RECORDER'S USE

**APN: 701-382-43**            # GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S):
    DOCUMENTARY TRANSFER TAX is $0.00      CITY TAX is $0.00
    ☐ computed on the full value of the property conveyed, or
    ☐ computed on full value less value of liens or encumbrances remaining at the time of sale,
    ☒ Realty not sold
    ☐ Unincorporated area      ☒ City of San Clemente, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
L. Alexandra Solomon Irrevocable Trust, dated April 12, 2001 Nicholas Solomon as Sucessor Trustee

hereby GRANT(S) to Edward Solomon, a widower

the following described real property in the City of San Clemente, County of Orange, State of California:
As shown in Exhibit "A" attached hereto and made a part hereof, and commonly known as 4 Corte La Cereza, San Clemente, CA 92673

Dated: 7/11/2013

STATE OF CALIFORNIA     }
COUNTY OF _Orange_    }ss
                    }

On _August 8, 2013_ before me
_Brad Meindertsma_, Notary Public,

personally appeared _Nicholas Solomon_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which  the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature

_Nicholas Solomon, Sucessor Trustee_
L. Alexandra Solomon Irrevocable Trust, date April 12, 2001, Nicholas Solomon, Successor Trustee

SPACE BELOW RESERVED FOR NOTARY SEAL

BRAD MEINDERTSMA
Commission # 1962205
Notary Public - California
Orange County
My Comm. Expires Dec 1, 2015

Grant Deed

# EXHIBIT "4"

# EXHIBIT "A"

PARCEL 1:

LOT 54 OF TRACT NO.: 16365, AS SHOWN ON A SUBDIVISION MAP
RECORDED IN BOOK 843, PAGES 35 TO 42 INCLUSIVE OF
MISCELLANEOUS MAPS, IN THE OFFICE OF THE ORANGE COUNTY
RECORDER.

PARCEL 2:

NON-EXCLUSIVE EASEMENTS REVOCABLE LICENSES AND OTHER
RIGHTS FOR ACCESS, INGRESS, EGRESS, USE AND ENJOYMENT,
DRAINAGE, ENCROACHMENT, SUPPORT, MAINTENANCE, REPAIRS, AND
FOR OTHER PURPOSES, ALL AS DESCRIBED IN THE MASTER
DECLARATION, THE SUPPLEMENTAL DECLARATION, THE MAP AND
THE AGREEMENT.

EXHIBIT "4"

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

**RECORDING REQUESTED BY:**

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖   12.00
* $ R 0 0 0 6 2 4 5 2 0 2 $ *

**WHEN RECORDED MAIL TO:**

2013000574277 01:58pm 10/08/13

93 406 G02 F13 2

John Ellis
2605 West 18th Street
Redondo Beach, CA 90278

0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN: 704-382-43                    **GRANT DEED**

THE UNDERSIGNED GRANTOR(S) DECLARE(S):    *For financing purposes only no consideration*
DOCUMENTARY TRANSFER TAX is $0.00        CITY TAX is $0.00
☐ computed on the full value of the property conveyed, or
☐ computed on full value less value of liens or encumbrances remaining at the time of sale,
☒ Realty not sold
☐ Unincorporated area          ☒ City of San Clemente, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
Edward Solomon, a widower

hereby GRANT(S) to John Ellis to an undivided 50% Interest and Edward Solomon to an undivided 50% Interest

the following described real property in the City of San Clemente, County of Orange, State of California:
As shown in Exhibit "A" attached hereto and made a part hereof, and commonly known as 4 Corte La Cereza, San
Clemente, CA 92673

Dated: 9/20/2013

STATE OF CALIFORNIA          }
COUNTY OF _Orange_           }ss          Edward Solomon

On _October 2, 2013_ before me

_Brad Meindertsma_, Notary Public,

personally appeared _Edward Solomon_

who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf
of which the person(s) acted, executed the instrument.

SPACE BELOW RESERVED FOR NOTARY SEAL

I certify under PENALTY OF PERJURY under the laws of the State of
California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

BRAD MEINDERTSMA
Commission # 1962205
Notary Public - California
Orange County
My Comm. Expires Dec 1, 2015

*Mail tax statements: 4 Corte La Cereza, San Clemente, CA 92673*

Grant Deed

EXHIBIT 4

# EXHIBIT "A"

THE LAND REFERRED TO HEREIN IS SITUATED IN THE COUNTY OF ORANGE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL NO. 1

LOT 54 OF TRACT NO. 16365, IN THE CITY OF SAN CLEMENTE, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A SUBDIVISION MAP ("MAP") RECORDED IN BOOK 843, PAGES 35 THROUGH 42, INCLUSIVE, OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM THE OIL, GAS, MINERALS, AND OTHER HYDROCARBON SUBSTANCES LYING BELOW THE SURFACE OF SAID LAND, AS PROVIDED IN DEEDS OF RECORD.

PARCEL NO. 2

NONEXCLUSIVE EASEMENTS, REVOCABLE LICENSES AND OTHER RIGHTS FOR ACCESS, INGRESS, EGRESS, USE AND ENJOYMENT, DRAINAGE, ENCROACHMENT, SUPPORT, MAINTENANCE, REPAIRS, AND FOR OTHER PURPOSES, ALL AS DESCRIBED IN THE MASTER DECLARATION RECORDED ON SEPTEMBER 24, 1999, AS INSTRUMENT NO. 19990686286, OF OFFICIAL RECORDS, THE SUPPLEMENTAL DECLARATION, THE MAP AND THE AGREEMENT.

ASSESSOR'S PARCEL NUMBER: 701-382-43

# EXHIBIT "4"